IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MADISON TITLE AGENCY, LLC<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:20-cv-03674-SCJ |

**BANK OF AMERICA N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Bank of America, N.A. ("BANA" or "Defendant"), by and through its undersigned counsel, and files this Memorandum of Law in Support of its Motion for Summary Judgment.

## I. INTRODUCTION

Plaintiff is a title insurance agent that fell victim to a business email compromise scheme in September 2019. Instead of wiring funds to a mortgage provider to pay off a seller's mortgage, Plaintiff was duped into wiring more than $350,000 to a scammer using fraudulent wiring instructions it received by email. Plaintiff did not discover its error for a month, and by then, the scammer had transferred the funds elsewhere.

Plaintiff sued BANA because it happened to be the bank where the scammer maintained the bank account where Plaintiff wired the funds. Even though BANA merely processed the wire transfer it received from Plaintiff's bank and immediately credited it to the account that Plaintiff had identified, Plaintiff contends that BANA should be held legally responsible for its loss.

UCC Article 4A is clear, however, that BANA has no liability to Plaintiff under these facts. [redacted] In addition, Article 4A expressly allows BANA to credit a beneficiary's account with funds received in a wire transfer based upon the identified account number alone, and does not impose a duty on beneficiary banks to determine if the name of the identified beneficiary matches the name of the owner of the beneficiary account.

Plaintiff's negligence claim fails because it is preempted or displaced by UCC

Article 4A, and because banks do not owe duties to non-customers.

Plaintiff was in the best position to avoid this loss by verifying the wire instructions it received by email before sending more than $350,000 to a scammer. The law does not permit Plaintiff to shift responsibility for its own negligence to the bank that merely credited a wire transfer it received to the account that Plaintiff identified. Therefore, BANA respectfully requests that the Court grant summary judgment in its favor.

## II. PROCEDURAL HISTORY

Plaintiff Madison Title Agency, LLC. ("Plaintiff") filed this lawsuit on July 10, 2020 in the Superior Court of Gwinnett County, Georgia, against Bank of America Corporation ("BAC"). Docket No. 1-1. Plaintiff served BAC on August 6, 2020. On September 4, 2020, BAC removed the lawsuit to this Court based upon diversity jurisdiction. Docket No. 1. BAC filed its answer and affirmative defenses on September 11, 2020. Docket No. 3.

On November 27, 2020, Plaintiff filed its Amended Complaint, substituting Bank of America, N.A. ("BANA") as the defendant in lieu of BAC. Docket No. 11. BANA filed its answer and affirmative defenses on December 18, 2020. Docket No. 15.

The Court issued its initial scheduling order on October 19, 2020. Docket No.

8. Upon joint motion of the parties, the case deadlines were extended by subsequent orders dated February 1, 2021, April 21, 2021, and July 16, 2021. Docket Nos. 19, 27, and 34. Fact discovery ended on September 30, 2021. The Court extended the dispositive motion deadline by consent of both parties to March 15, 2022. Docket No. 48. BANA now moves for summary judgment on Plaintiff's claims.

## III. FACTUAL BACKGROUND

Plaintiff is a title insurance agent who was tricked through a business email compromise scheme into wiring $368,948.75 to a fraudster. BANA's Statement of Undisputed Material Facts ("SOF") ¶ 1.

In September 2019, Plaintiff attempted to pay off a seller's existing mortgage in a real estate closing transaction. *Id.* ¶ 2. On September 12, 2019, Plaintiff received an altered mortgage payoff statement with fraudulent wiring instructions from a person purporting to be the seller. *Id.* ¶ 3. The fraudulent wiring instructions directed Plaintiff to wire the funds to an account number at BANA ending in 7038 (the "Beneficiary Account") and identified the beneficiary as "RoundPoint KastTrans LLC." *Id.* ¶ 4.

On September 19, 2019, Plaintiff initiated a wire transfer in the amount of $368,948.75 from its bank, Bank United, to the Beneficiary Account at BANA, identifying the account number as the number ending in 7038 and identifying the

beneficiary name as "RoundPoint KastTrans LLC" (the "Wire Transfer"). *Id.* ¶ 5. Bank of America credited the funds from the Wire Transfer to the Beneficiary Account, which was maintained in the name "Kast Trans, LLC." *Id.* ¶ 6. Plaintiff didn't discover that it had been tricked by a fraudster until a month later when the seller notified it that his mortgage had not been paid off. *Id.* ¶ 11.

Plaintiff contends that BANA should be held liable because "the name on the payment order received by the Bank was different from the name on the Bank's Customer's Account." Docket 11, ¶ 4. More specifically, Plaintiff alleges that the Wire Transfer identified the beneficiary by name as "RoundPoint KastTrans LLC" when the Beneficiary Account was owned by "Kast Trans, LLC." *Id.*, ¶¶ 4, 9. Plaintiff incorrectly alleges that BANA knew about this claimed name discrepancy at the time of processing and paid the funds from the Wire Transfer to the Beneficiary Account anyway, violating its own policies. *Id.*, ¶ 11.

Discovery has established, however, that [redacted]

[redacted]

The owner of the Beneficiary Account immediately transferred the funds received in the Wire Transfer elsewhere in a series of transactions for the purposes of covering up the fraud. SOF ¶ 12. Plaintiff didn't discover that it had been tricked by a fraudster until a month later when the seller notified it that his mortgage had not been paid off. SOF ¶ 13.

Plaintiff incorrectly alleged that BANA negligently failed to follow its own policies and procedures in processing the Wire Transfer, and that O.C.G.A. § 11-4A-207 requires that BANA return the funds from the Wire Transfer to Plaintiff. Docket 11, ¶¶ 14-26. Discovery in this matter has established that Plaintiff's factual and legal contentions are incorrect, and because there is no genuine issue of material fact, summary judgment should be granted in favor of BANA.

## IV. STANDARD OF REVIEW

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Brooks v. County Comm'n*, 446 F.3d 1160, 1162 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)).

The party moving for summary judgment bears the burden of production. *Id.* If the moving party meets this burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Id.* (quoting *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007)). "Speculation does not create a genuine issue of fact." *Id.* (quoting *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Conclusory allegations without specific supporting facts in the in record do not constitute a showing sufficient to survive summary judgment. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## V. ARGUMENT

### A. BANA Is Not Liable Under O.C.G.A. § 11-4A-207.

Plaintiff incorrectly alleges that BANA "knew and had actual knowledge" that the name of the beneficiary identified in the Wire Transfer was different than the owner of the Beneficiary Account identified in the Wire Transfer, and had this knowledge "at the time of payment" or "from the time such would have been brought to the attention of the individual conducting the transaction if the organization had exercised due diligence." Docket 11, ¶ 17. Plaintiff has no evidence to support this claim. [redacted] There is no genuine dispute of material fact on this issue, and therefore summary judgment should be granted to BANA on Plaintiff's Article 4A claim.

[redacted]

[redacted]

9

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

The Eleventh Circuit's recent opinion in *Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 F. App'x 741 (11th Cir. 2019) [redacted]

---

[1] BANA does not admit that the Wire Transfer identified different persons by name and account number, and contends that the named beneficiary ("RoundPoint KastTrans LLC") was substantially similar to the name of the owner of the Beneficiary Account ("Kast Trans, LLC").

[redacted]

[redacted]

[redacted]

[redacted] Under these facts and the clear law, BANA is not liable to Plaintiff under O.C.G.A. § 11-4A-207 and the Court should grant summary judgment in favor of BANA.

**B. Plaintiff's Negligence Claim Fails as a Matter of Law.**

1. BANA Has No Duty to Plaintiff.

Plaintiff's negligence claim against BANA fails because BANA owed it no duty of care. A duty of care is a "threshold issue in a negligence action." *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533, 744 S.E.2d 369 (2013), *reconsideration denied* (July 1, 2013), *cert. denied* (Nov. 4, 2013). The "fail[ure] to allege any cognizable statutory or common law legal duty" is a valid basis for dismissing a negligence claim. *Id.*

Here, Plaintiff has failed to allege the existence of a legal duty running from BANA to Plaintiff, as a non-customer, and BANA is therefore entitled to summary judgment. *See Promissor, Inc. v. Branch Banking & Trust Co.*, 1:08-CV-1704-BBM, 2008 WL 5549451, *5 (N.D. Ga. Oct. 31, 2008) (collecting cases). In

*Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002), the Fourth Circuit held that a bank does not owe a duty to a non-customer with no relationship to the bank who is defrauded by the bank's customer through use of its services. The non-customer plaintiff in *Eisenberg* wired $1 million to a fraudster's account at the defendant bank. The Fourth Circuit found that Eisenberg fell "into the undefined and unlimited category of strangers who might interact with [defendant's] customer" and affirmed the dismissal of his negligence claims for lack of a legal duty. *Id.* at 226. To extend the bank's duty to include strangers like Eisenberg (or Plaintiff in the instant case), the court reasoned, "would expose banks to unlimited liability for unforeseeable frauds." *Id.*

Nationwide, courts in numerous jurisdictions have similarly held that a bank does not owe a duty of care to a non-customer with whom the bank has no direct relationship. *See, e.g., Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004) (banks owe no general duty of care to non-customers); *Towne Auto Sales, LLC v. Tobsal Corp.*, No. 1:16-cv-02739, 2017 WL 5467012 (N.D. Ohio Nov. 14, 2017) (dismissing negligence claim against BANA brought by a used car dealer who wired funds from its Chase Bank account to a BANA account that it believed belonged to the seller of a 1958 Corvette, but in fact belonged to fraudster, on the grounds that the dealer was not a BANA customer and BANA had no duty to the

dealer); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F.Supp.2d 20, 26-27 (D. Mass. 2011) (refusing to carve out an exception to the "now almost universal rule that banks do not owe a common law duty of care to third-party non-customers"); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 3329181, at *4-7 (W.D. Okla. Aug. 2, 2011) (agreeing that "a bank does not have a duty to third-party non-customers, even if the bank customer engages in misconduct harmful to the non-customer"); *In re Agape Litig.*, 681 F.Supp.2d 352, 360 (E.D.N.Y. 2010) ("[B]anks do not owe non-customers a duty to shield them against intentional torts committed by bank customers"); *Old Republic Nat'l Title Ins. Co. v. Landmark Closing Co.*, No. 4:09-CV-00422, 2010 WL 2228436, at *2 (E.D. Ark. June 1, 2010) ("The general rule in Arkansas and elsewhere is that banks do not owe noncustomers a duty to exercise reasonable care."); *Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *6-7 (S.D. Tex. Aug. 16, 2006) ("Banks have no duty to non-customers."); *Radwill v. Romeo*, No. 1-11-0912, 2013 WL 1289072, at *9 (Ill. App. Mar. 29, 2013) ("Under Illinois law, a bank does not owe a common law duty of care to a non-customer."); *Ahlan Wa Sahlan Hospitality Co. v. United Citizens Bank of S. Ky., Inc.*, No. 2011-CA-001349, 2013 WL 275636, at *1-2 (Ky. App. Jan. 25, 2013) (declining to recognize any duty owed by a bank to a non-customer third party); *Tang, LLC v. MAJ Services, LLC*, No. 13A686949, 2017 WL

4869517 (Dist. Ct. Nev. Sept. 19, 2017) (defendant Chase bank "fulfilled its obligations under the Uniform Commercial Code and has no duty to a non-customer as a matter of law" by accepting a wire transfer from the plaintiff's bank to the Chase bank account of the beneficiary specified in the wire).

Similarly, in this case, BANA had no duty of care to Plaintiff, and BANA is therefore entitled to summary judgment.

2. Plaintiff's Negligence Claim is Displaced or Preempted by UCC Article 4A.

Article 4A of Chapter 11 of the Code of Georgia governs wire transfers, such as the one at issue in this case, and governs the rights and responsibilities of the parties to the wire transfer.[2] Georgia enacted Article 4A of the Uniform Commercial Code in 1992 to provide norms and ensure predictability vis-à-vis funds transfers:

> A deliberate decision was . . . made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
>
> Funds transfers involve competing interests--those of the banks that provide funds transfer services and the commercial and financial

[2] As the wire transfer at issue was also a Fedwire transfer, UCC Article 4A also governs pursuant to subpart B of Regulation J. 12 C.F.R. § 210.25.

> organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

O.C.G.A § 11-4A-102, Official Comment.

Courts nationwide, including this Court and the Eleventh Circuit, have adopted the principle that the Article 4A supersedes common law negligence claims relating to wire transfers. *See*, *e.g.*, *Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 F. App'x 741, 750-51 (11th Cir. 2019) (affirming the dismissal of a negligence claim against a beneficiary bank relating to its processing of a $500,000 wire transfer on the grounds that it was preempted by Article 4A); *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d Cir. 2010) ("Article 4A's text strongly suggests that it applies to claims asserting the existence of unauthorized wire transfers regardless of what the claims may be called"); *McClellon v. Bank of America, N.A.*, No. C18-0829-JCC, 2018 WL 4852628, at *4 (W.D. Wash. Oct. 5, 2018) ("Article 4A provides the only remedy for claims involving funds transfers"); *Zengen, Inc. v. Comerica Bank,* 59 Cal. Rptr. 3d 240, 41 Cal. 4th 239 (Cal. 2007) (holding that common law causes of action by

purported originator against its bank for negligence and breach of contract are preempted by provisions on Article 4A regarding fraudulent funds transfers); *Fitts v. AmSouth Bank*, 917 So.2d 818, 824 (Ala. 2005) (holding that the basis of the claim was an improper funds transfer, which was unequivocally addressed in the particular provisions of Article 4A and therefore common law claims were displaced); *Schlegel v. Bank of America, N.A.*, 628 S.E.2d 362 (Va. 2006) (finding common law claims preempted by Article 4A where they would create "rights, duties, and liabilities" inconsistent with Article 4A).

In fact, this Court recently held in *Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1310 (N.D. Ga. 2020) that Article 4A governed and preempted a common law negligence claim, "where a bank receives a payment order that identifies the beneficiary of the funds by both name and account number, but the name and account number do not match." *Id.* at 1309. The Court noted that Section 4A-207 applied "squarely to the situation at hand," and noted how courts "have widely and routinely found that the U.C.C. preempts common law claims arising out of wire transfers, especially in cases involving a name-account number mismatch." *Id.* at 1310. The Court held that "any liabilities and duties of the Banks related to the wire transfers are exclusively governed by the language of O.C.G.A. § 11-4A-207(b)(1)" and that the plaintiff's common law negligence claim was

displaced by the UCC. *Id.* at 1311; *see also DeFazio v. Wells Fargo Bank Nat'l Ass'n,* No. CV 20-375 (SRC), 2020 WL 1888252, at *3 (D.N.J. Apr. 16, 2020) (Article 4A preempted negligence claim and "specifically pertains to situations in which the originator of a funds transfer sends the receiving bank a payment order in which the beneficiary is described by name and by an identifying account number but the two pieces of information do not match, that is, the payment order contains conflicting information as to identification of the beneficiary").

To the extent that Plaintiff claims BANA is liable for any alleged acts or omissions relating to its processing of the wire transfer at issue in this case, those claims are preempted by Article 4A of the UCC and should be dismissed. *See also Eisenberg*, 301 F.3d at 223 (holding that the plaintiff's negligence claims were preempted insofar as they challenged the bank's processing of the wire transfer at issue). Allowing Plaintiff to have a common law remedy here against BANA where Article 4A rejects such a theory would be inconsistent with the carefully crafted set of rules in Article 4A and upset the delicate balance of interests crafted by those rules. Therefore, summary judgment should be granted in favor of BANA.

### C. BANA is Entitled to Summary Judgment on Plaintiff's Claim for Attorney's Fees and Expenses.

Plaintiff seeks attorneys' fees and costs from BANA pursuant to O.C.G.A.

§ 13-6-11, which provides, "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." In *Wilson v. IBM*, 610 F. Appx 886, 890 (11th Cir. 2015), the Eleventh Circuit held, "'A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim.'" *Id.* at 890 (citing *United Companies Lending Corp. v. Peacock*, 267 Ga. 145, 475 S.E.2d 601, 602 (1996)." The court concluded that "[b]ecause summary judgment in favor of IBM was appropriate on the breach of contract claim, Mr. Wilson is not entitled to attorney's fees under § 13-6-11." *Id.* Thus, because summary judgment in favor of BANA is appropriate here, Plaintiff is not entitled to attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

In addition, because there are no facts to support an award of attorney's fees and costs under O.C.G.A. § 13-6-11, summary judgment should be granted to BANA on this claim. *See Silverpop Sys. v. Leading Mkt. Techs., Inc.,* 641 F. Appx 849, 859 (11th Cir. 2016); *Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.*, 230 Ga. App. 455, 457, 496 S.E.2d 546, 550 (1998) ("A recovery of OCGA § 13-6-11 attorney's fees in a contract action must be based upon evidence which

shows more than a mere breach of contract."); *Williams Tile & Marble Co., Inc. v. Ra-Lin & Associates, Inc.*, 206 Ga. App. 750, 752, 426 S.E.2d 598, 601 (1992) (no recovery where the record shows the existence of a bona fide controversy as to reasons for which defendant would have no contractual liability to plaintiff); *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579, 581, 394 S.E.2d 367, 370 (1990) ("Where there exists a bona fide controversy, recovery of attorney fees is not authorized for stubborn litigiousness and unnecessary trouble and expense." (citing cases)).

## VI. CONCLUSION

Plaintiff's lawsuit seeks to impose a duty on banks to protect non-customers from their own negligence that the Uniform Commercial Code and courts have uniformly rejected. The law does not allow Plaintiff to hold BANA responsible for crediting a wire transfer into a beneficiary account that Plaintiff specifically identified in its instructions to its bank. [redacted] Under Article 4A, it is Plaintiff who must bear the loss for its own negligence in making this transfer and failing to discover and report the fraud in time

to allow the banks to recover the funds. Therefore, BANA respectfully requests that summary judgment be entered in its favor.

This the 6th day of April, 2022.

/s/ Allison Rhadans
Allison Rhadans
Georgia Bar No. 940557
McGuireWoods LLP
1230 Peachtree Street, NE
Promenade II, Suite 2100
Atlanta, Georgia 30309-3534
(404) 443-5700 (Telephone)
ARhadans@mcguirewoods.com

*Attorney for Defendant Bank of America, N.A.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MADISON TITLE AGENCY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. 1:20-cv-03674-SCJ |
| v. | ) | |
| | ) | REMOVED FROM |
| BANK OF AMERICA | ) | SUPERIOR COURT |
| CORPORATION, | ) | |
| | ) | GWINNETT COUNTY CASE |
| | ) | NO. 20-A-04652-7 |
| Defendant. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2022, I served a true and correct copy of ***Bank of America, N.A.'s Memorandum in Support of its Motion for Summary Judgment*** on the following via First-Class Mail, postage prepaid, addressed to:

George A. Koenig
Koenig Law Group, P.C.
Peachtree 25th, Suite 599
1718 Peachtree Street NW
Atlanta, GA 30309
*Attorney for Plaintiff*

/s/ Allison Rhadans
Allison Rhadans
Georgia Bar No. 940557